**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Ira R. Deiches, Esquire**
**DEICHES & FERSCHMANN**
**A Professional Corporation**
**525 Route 73 N, Ste 104**
**Marlton, NJ 08053**
**(856)428-9696**
**Attorneys for Debtor and Debtor-in-Possession**

Case No. 25-21049

In Re:

Judge: Hon. Jerrold N. Poslusny, Jr.

ROSE ANN TAMBURRI,

Chapter 11

        Debtor and Debtor-in-Possession.

---

### DISCLOSURE STATEMENT PURSUANT TO
### SECTION 1125 OF THE BANKRUPTCY CODE
### DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION
### PROPOSED BY ROSE ANN TAMBURRI

---

      **PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF REORGANIZATION. THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.**

*S/ Rose A. Tamburri*

Dated:   June 2, 2026

                Rose A. Tamburri

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

    A.  Purpose of This Document . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

    B.  Confirmation Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

        1.  Time and Place of the Confirmation Hearing . . . . . . . . . . . . . .   2

        2.  Deadline For Voting For or Against the Plan . . . . . . . . . . . . . . .   2

        3.  Deadline For Objecting to the Confirmation of the Plan . . . . . .   3

        4.  Identity of Person to Contact for More Information Regarding

           the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

    C.  Disclaimer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

II.  BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

    A.  Description and History of the Debtors' Financial Affairs . . . . . . . . . . .   3

    B.  Principals/Affiliates of Debtors' Business . . . . . . . . . . . . . . . . . . . . . . .   3

    C.  Management of the Debtors' Affairs Before and After the Bankruptcy. .   4

    D.  Events Leading to Chapter 11 Filing . . . . . . . . . . . . . . . . . . . . . . . . . .   4

    E.  Significant Events During the Bankruptcy . . . . . . . . . . . . . . . . . . . . . .   5

        1.  Bankruptcy Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

        2.  Other Legal Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

        3.  Actual and Projected Recovery of Preferential or Fraudulent

           Transfers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

        4.  Procedures Implemented to Resolve Financial Problems . . . . . . .   5

        5.  Current and Historical Financial Conditions . . . . . . . . . . . . . . .   6

III.  SUMMARY OF THE PLAN OF REORGANIZATION . . . . . . . . . . . . . . . . . .   7

    A.  What Creditors and Interest Holders Will Receive Under the Proposed

       Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

    B.  Unclassified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

        1.  Administrative Expenses and Fees . . . . . . . . . . . . . . . . . . . . . .   7

        2.  Priority Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

    C.  Classified Claims and Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

        1.  Classes of Secured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

        2.  Classes of Priority Unsecured Claims . . . . . . . . . . . . . . . . . . . .   10

        3.  Class of General Unsecured Claims . . . . . . . . . . . . . . . . . . . . .   11

        4.  Class(es) of Interest Holders . . . . . . . . . . . . . . . . . . . . . . . . . .   13

D.  Means of Effectuating the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    1.  Funding for the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    2.  Post-Confirmation Management . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    3.  Disbursing Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
E.  Other Provisions of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    1.  Executory Contracts and Unexpired Leases . . . . . . . . . . . . . . . . . 13
    2.  Changes in Rates Subject to Regulatory Commission
        Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    3.  Retention of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    4.  Procedures for Resolving Contested Claims . . . . . . . . . . . . . . . . 14
    5.  Effective Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    6.  Modification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
F.  Tax Consequences of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
G.  Risk Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV.  CONFIRMATION REQUIREMENTS AND PROCEDURES . . . . . . . . . . . . . . 15
A.  Who May Vote or Object . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    1.  Who May Object to Confirmation of the Plan . . . . . . . . . . . . . . . 15
    2.  Who May Vote to Accept/Reject the Plan . . . . . . . . . . . . . . . . . . 16
        a.  What Is an Allowed Claim/Interest . . . . . . . . . . . . . . . . . . 16
        b.  What Is an Impaired Claim/Interest . . . . . . . . . . . . . . . . . . 16
    3.  Who Is Not Entitled to Vote . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    4.  Who Can Vote in More Than One Class . . . . . . . . . . . . . . . . . . . . 17
    5.  Votes Necessary to Confirm the Plan . . . . . . . . . . . . . . . . . . . . . . 17
    6.  Votes Necessary for a Class to Accept the Plan . . . . . . . . . . . . . . 17
    7.  Treatment of Nonaccepting Classes . . . . . . . . . . . . . . . . . . . . . . . 17
    8.  Request for Confirmation Despite Nonacceptance by Impaired
        Class(es) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
B.  Liquidation Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
C.  Feasibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

V.  EFFECT OF CONFIRMATION OF PLAN . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
A.  Discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
B.  Revesting of Property in the Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
C.  Modification of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
D.  Post-Confirmation Conversion/Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . 20

## I.  INTRODUCTION

On October 17, 2025, (the "Petition Date"), Rose Tamburri ("Rose" or "Debtor") commenced this bankruptcy case by filing her Voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code (the "Code"), 11 U.S.C. §101, et  seq.  Chapter 11 of the Code allows a debtor, and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization (the "Plan").  The Plan may provide for the debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  Rose (also referred to as the "Proponent") is the party proposing the Plan sent to you in the same envelope as this document.  **THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN WHICH IS ANNEXED HERETO.**

This is a reorganizing plan.  In other words, the Proponent seeks to accomplish payments under the Plan through projected cash flows and cash on hand.  The Effective Date of the proposed Plan is the date that is thirty (30) days after the entry of the Order confirming the Plan.

**A.     Purpose of This Document**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)     WHO CAN VOTE OR OBJECT,**

**(2)     THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION,**

**(3)     THE HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

**(4)     WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN,**

**(5)     THE EFFECT OF CONFIRMATION, AND**

**(6)     THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.  Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Code Section 1125 requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The term "adequate information" is defined in Code Section 1125(a) as

"information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor to make an informed judgement about accepting or rejecting the Plan.  The Bankruptcy Court (the "Court") has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with Code Section 1124.

This Disclosure Statement is provided to each creditor whose claim has been scheduled by Rose or who has filed a proof of claim against Rose as of the date of approval of this Disclosure Statement.  Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

**B.      Confirmation Procedures**

Persons Potentially Eligible to Vote on the Plan

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by Rose as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation of the Plan, has filed with the Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan.  The Ballot Form that you received does not constitute a proof of claim.  If you are uncertain whether your claim has been correctly scheduled, you should check Rose's Schedules, which are on file at the office of the Clerk of the Bankruptcy Court located at: U. S. Post Office and Courthouse, 401 Market Street, 2nd Floor, Camden, NJ 08101.  The Clerk of the Bankruptcy Court will not provide this information by telephone

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS IN THIS CASE.

**1.    Time and Place of the Confirmation Hearing**

The hearing at which the Court will determine whether to confirm the Plan will take place on _____, 2026, at 10:00 a.m., in Courtroom 4C, Mitchell H. Cohen U.S. Courthouse, 400 Cooper Street, 4th Floor, Camden, NJ 08101.

**2.    Deadline For Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot to Deiches & Ferschmann, A Professional Corporation, at 525 Route 73 N, Suite 104, Marlton, NJ 08053.

Your ballot must be received by _____, 2026, or it will not be counted.

**3. Deadline For Objecting to the Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Court and served upon Ira R. Deiches, Esquire, at 525 Route 73 N, Suite 104, Marlton, NJ 08053 by _____, 2026.

**4. Identity of Person to Contact for More Information Regarding the Plan**

Any interested party desiring further information about the Plan should contact Ira R. Deiches, Esquire, Rose's attorney.

**C. Disclaimer**

**The financial data presented in this Disclosure Statement is taken from Rose's books and records and projections and valuations prepared by her.**

The Plan Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge.

**PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.**

**II. BACKGROUND**

**A. Description and History of the Debtor**

Rose Tamburri is a single 64 year old woman, residing in a single family residence at 47 Michaelson Drive, Mount Laurel (the "Residence."). Rose acquired the Residence with Michael Tamburri, her husband of 25 years, in 1990. Rose and Michael separated in 2014and were divorced in October, 2015. The Residence remains in both Rose's and Michael's names, but Rose is responsible for all financial aspects of ownership of the home.

During their marriage had 4 children, 3 sons and a daughter. The 3 sons are now 35, 31 and 26 years old and Rose's daughter is 30. Rose, youngest son, Dominic, still lives with Rose.

Rose has built a career as a court reporter, beginning upon her graduation from Pierce Junior College in 1981. Rose was an official staff reporteer at the United States Federal Courthouse in Philadelphia, but transitioned to a free-lance court reporter in 1991 to better manage her work commitments and personal time as her family began to grow. Rose continues as a free-lance reporter to this day.

**B. Principal/Affiliates of Debtors' Business: Not Applicable**

**C.      Management of Debtor's Affairs  Before and After the Bankruptcy**

Rose was in control of her assets and affairs before the filing of this case and remained in control of her assets and affairs as Debtor-in-Possession.  No case trustee or Official Committee of Unsecured Creditors has been appointed.

**D.      Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

As explained above, Rose separated from her husband in 2014.  At that time, Rose's household included her  daughter, Gabriele, and youngest son, Dominic.  For the next 5 years, until Gabriele married and relocated, Rose supported herself and her children without support or contribution.  The end of Rose's marriage, and the occurrence of other family hardships described below, signaled the beginning of the deterioation of Rose's financial circumstances.

When Rose's middle son, Brandon, was 15, he was diagnosed with cancer.  This unfortunate news sent Rose and her family reeling.  Rose spent many nights with Brandon at Children's Hospital of Philadelphia during the period of extensive medical treatment.   As any mother would, Rose committed herself and her time to attend to her child through his treatment and recovery, providing both physical and emotional support to the yourg patient.

With Rose's having to serve as the family's sole source of support, with no other meaningful assistance, the time spent caring for Brandon took Rose away from her court reporting business and delivered a devastating blow to an already strained household budget.  Struggling to provide a stable home for her children while suffering reduced income levels, Rose fell significantly behind in her obligations to the federal and state taxing authorities.  Seeking to prop up her failing finances, while shoulderng the household's expenses alone, Rose sought assistance from lenders, providing high-interest credit, credit card lines, and turned to opportunities to borrow wherever she could find them.  Rose fell deeper and deeper in debt.

After successful surgery and chemotherapy, Brandon made a recovery that now finds him cancer-free for the past 10 years.   Having survived his personal ordeal, Brandon decided to pursue his dream of a film-making career.    During what turned out to be a 5 year journey into the new profession, Brandon returned home to his family and mother, once again finding care from Rose, who supplied encouragement and financial support through June, 2025.

As a single mother with full time employment and child/family care duties, Rose has tried to manage her financial woes by seeking relief through various associations, engaging firms that offered the hope of resolving Rose's troubled finances with particular focus on her unpaid and growing tax debts.  Despite her attempts to responsibly address her indebtedness and despite payment of substantial fees in those efforts, Rose found no help.

On April 23, 2025, Rose filed a case under Chapter 13 of the Bankruptcy Code, hoping to reorganize her financial affairs under the streamlined process offered by Chapter 13.  Unfortunately, Rose's debts exceeded the cap on Chapter 13 eligibility and that earlier case was dismissed on September 13, 2025.  Determined to seek bankruptcy relief, Rose sought new counsel and was advised that she could try to achieve a financial rehabilitation through significant spending adjustments, formulating a long term plan for economic stability, and proposing a Plan of Reorganization under Chapter 11.

-4-

**E.      Significant Events During the Bankruptcy**

**1.      Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred during this case:

This case was commenced on October 17, 2025.

No Official Committee of Unsecured Creditors was formed.

On October 17, 2025, Debtor filed a Motion seeking an Order extending the full automatic stay applicable to all creditors.  This Motion was requiired by law since the present case followed Rose's unsuccessful case under Chapter 13, with both cases pending within a single calendar year.  U.S. Bank, National Association ("U.S. Bank")  as assignee of Rose's former mortgagor opposed the Motion.  After hearing argument, the Court granted Rose's Motion by Order entered November 13, 2025.

By Stipulation filed May 17, 2026, Debtor memorialized her agreement with the United States, Department of the Treasury, Internal Revenue Service ("IRS") to modify the filed claim of IRS by reclassifying a $22,336, 68 penalty assessment in the filed claim from secured to unsecured status and allowing the claim as adjusted.

No other motions, Contested Matters, Adversary Proceedings, or other proceedings have been filed to date.

The Court has approved the employment of the following professionals:

By Order entered November 10, 2025, the Court approved Debtor's retention of Deiches & Ferschmann, A Professional Corporation, as Debtor's attorneys.

By Order entered December 2, 2025 the Court approved  Debtor's retention of Joseph B. Friedman, CPA as Debtor's accountant.

No other applications for the retention of other professionals have been submitted and none are contemplated.

**2.      Other Legal Proceedings**

Other than the proceedings discussed above, Debtor is not currently involved in any legal proceedings.

**3.      Actual and Projected Recovery of Preferential or Fraudulent Transfers**

Debtor has not pursued, and does not intend to pursue, preference, fraudulent conveyance, or other avoidance actions.

**4.      Procedures Implemented to Resolve Financial Problems**

In an effort to remedy the problems that led to the bankruptcy filing, Rose took a number of steps to improve her financial and cash management.  She developed a more significant appreciation of cash flow needs and requirements, budgeting household expenses without resort to unsecured credit lines during this case, and filing her tax returns for periods before and after the filing of this case.  Despite missing time from work for hip surgeries and periods of recuperation, Rose has continued her court-reporting business, belt-tightening, freeing herself of various subscriptions and fees and avoiding unnecessary discretionary spending, taking up the challenge of supporting her household on her earnings, aiming for higher paid assignments when possible.

**5.      Current and Historical Financial Conditions.**

While valuations and comments will be reviewed later in this Disclosure Statement when presenting Rose's liquidation analysis, Debtor contends that there are little assets having value beyond Debtor's exemptions allowed under the Bankruptcy Code to support any recovery for Debtor's unsecured creditors after consideration of administrative expenses, secured claims and the tax claims owed to the United States of America and the State of New Jersey that must be fully paid under the Plan to be confirmed or following liquidation in a hypothetical Chapter 7 case.

Debtor and her ex-husband, Michael, have owned the Residence since 1990.  Debtor has adopted  a valuation of the Residence at $594,000.00 suggested by a local realtor consulted by Debtor. Deducting ten (10%) percent of that value as hypothetical sale costs, if the Residence were sold in a Chapter 7 case, a value of $534,600 results.  The Residence is subject to a 1st mortgage held by Wells Fargo Bank  (recorded 4/1/2002) securing $123,974 per the filed claim and a 2nd mortgage held by PNC Bank (recorded 1/9/2007) securing $83,015 per the filed claim.  These consensul liens encumber both the estate's interest in the Residence as well as Michael's interest. Deducting the balances owed to the two mortgagees leaves a residual value of $327,611, resulting in a value of Debtor's interest at $163,805.

This value is subject to a lien held by IRS (filed 9/18/2017) for $94,206 per the IRS's filed claim as modified by the parties' Stipulation and liens held by the Division of Taxation by virtue of Certificates of Debt filed 9/19/2019, 1/25/2024. and 11/14/2024 totaling $27,096 per the Division's filed claim.  These secured tax claims total $122,112.24 leaving $41,692 in value for the estate's interest, but subject to Debtor's statutory exemption  in the Residence of $31,575. This analysis leaves a residual value in the Residence of $10,117 available for distribution under the Plan.

 It must be noted that Fulton Bank, N.A. ("Fulton") filed a claim based on a debt established by a Final Judgment of Default in favor of Fulton and against Debtor and others entered August 27, 2015 in the Superior Court of New Jersey, Law Division, Burlington County, under docket number BUR-L-1331-15/J-162739-15 asserted as a secured claim by virtue of said judgment.  As noted elsewhere in this Disclosure Statement, Debtor challenges Fulton Bank's claim of a lien on the Residence because Fulton Bank did not levy execution against Debtor's interest in the Residence.

Debtor's last filed Monthly Operating Report, reflecting activity for April, 2026, reflects a bank account balance of approximately representing approximately $10,420 in the Debtor's accounts that will be applied to payment of administrative and priority claims, with a small dividend of approximately 2% to unsecured claims to follow.

Rose relies on her earnings to maintain her household and will rely on that revenue stream to fund the Plan.   Seeking relief from chronic pain, Rose had a hip replaced earlier this year and another hip replaced in late May, 2026.   These events and the period of rehabilitation and reduced mobility following surgeries, prevented Rose from taking in-person court reporting assignments. Opting to provide remote services to generate some income, when possible, Rose's earnings dipped and will remain reduced until she is able to drive to courts and law offices and to sit in

place for hours, if needed, without restriction.    The reduction in income is significant.   Remote assignments may generate gross fees of $1000-$1500/ day when available, while in-person jobs are likely to generate gross earnings in the $2000-$3000/day and higher levels.

While Rose is unable to project with certainty the continuity of her earning stream for the long term, she is hopeful that she will be able to maintain and improve her current service business and to realize an income level to support herself and disburse funds to creditors under the Plan.

## III.    SUMMARY OF THE PLAN OF REORGANIZATION

### A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan

The Plan classifies claims and interests in various classes.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

### B.    Unclassified Claims

Certain types of claims are not placed into voting classes.  They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Proponent has <u>not</u> placed the following claims in a class:

### 1.  Administrative Expenses and Fees

Administrative expenses are claims for fees, costs or expenses of administering Debtors' Chapter 11 case which are allowed under Code Section 507(a)(1), including all professional compensation requests pursuant to Sections 330 and 331 of the Code.  The Code requires that all administrative expenses, including fees payable to the Bankruptcy Court and the Office of the United States Trustee, which were incurred during the pendency of the case must be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of Rose's unpaid administrative fees and expenses ("Compensation"), an estimate of future professional fees and other administrative claims and fees, and their treatment under the Plan:

| NAME | AMOUNT | TREATMENT | TYPE OF CLAIM |
|---|---|---|---|
| Deiches & Ferschmann, A Professional Corporation Attorneys | $15,000 (Estimated) | The balance is estimated as fees and expenses generated in connection with the preparation and confirmation of Debtors' Plan, as may be allowed, to be paid in full on the Effective Date or through deferred payments as may be required. | Priority |
| Joseph B. Friedman, CPA Accountant | $5000 (Estimated) | The balance is estimated as fees and expenses generated in connection with services to be provided to Debtors during this case and through confirmation of Debtors' Plan, as may be allowed to be paid in full on the Effective Date or through deferred payments as may be required. | Priority |
| Clerk's Office Fees | To be determined. | To be paid in full on the Effective Date of Debtor's Plan. | Priority |
| Office of U.S. Trustee Fees | To be determined. | To be paid in full on the Effective Date of Debtor's Plan. | Priority |
| **TOTAL** | **TO BE DETERMINED** | | |

**Court Approval of Professional Compensation Required:**

Pursuant to the Bankruptcy Code, the Court must rule on all professional compensation and expenses listed in this chart before the compensation and expenses will be owed. The professional in question must file and serve a properly noticed fee application for compensation and reimbursement of expenses and the Court must rule on the application. Only the amount of compensation and reimbursement of expenses allowed by the Court will be owed and required to be paid under this Plan as an administrative claim.

Each professional person who asserts a further administrative claim that accrues before the confirmation date shall file with the Bankruptcy Court, and serve on all parties required to receive notice, an application for compensation and reimbursement of expenses no later than thirty (30) days after the Effective Date of the Plan. Failure to file such an application timely shall result in the professional person's claim being forever barred and discharged. Each and every other person asserting an administrative claim shall be entitled to file a motion for allowance of the asserted administrative claim within ninety (90) days of the Effective Date of the Plan, or such

administrative claim shall be deemed forever barred and discharged.  No motion or application is required to fix the fees payable to the Clerk's Office or Office of the United States Trustee.  Such fees are determined by statute.

As indicated above, Debtor will need to pay approximately $20,000 in administrative claims and fees on the Effective Date of the Plan unless a claimant has agreed to be paid later or the Court has not yet ruled on the claim.

### 2.   Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8).   The Code requires that each holder of such a Section 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five (5) years from the date of the commencement of the bankruptcy case.

The following chart lists all of the Debtor's Section 507(a)(8) priority tax claims and their treatment under the Plan:

| DESCRIPTION | AMOUNT OWED | TREATMENT |
|---|---|---|
| State of New Jersey (the "Division") | $7,581.69 | This sum, entitled to priority, will be paid in full in quarterly installments of $483.27 beginning with the quarter following the Effective Date with interest at the prevailing rate, with any balance owed to be fully paid on or before the 5th anniversary of the Petition Date. |
| Internal Revenue Service ("IRS") | $250,356.41 | This sum, entitled to priority, will be paid in full in beginning with the quarter following the Effective Date with interest at the prevailing rate, with any balance owed to be fully paid on or before the 5th anniversary of the Petition Date. |

### C.   Classified Claims and Interests

### 1.   Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.  The following chart lists all classes of creditors containing the holders of the Debtors' secured pre-petition claims and their treatment under the Plan:

-9-

| CLASS | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 1 | Wells Fargo Bank, N.A.("Wells Fargo") | No | Wells Fargo shall retain its lien on Debtor's Residence. Payments of $600.66 monthly shall be paid against Wells Fargo's claim in accordance with the terms and conditions of the loan documents evidencing that claim from funds received by Debtor in the ordinary course. |
| 2 | PNC Bank, National Association ("PNC") | No | PNC shall retain its lien on Debtor's Residence. Payments of $760.00 monthly shall be paid against PNC's claim in accordance with the terms and conditions of the loan documents evidencing that claim from funds received by Debtor in the ordinary course. |
| 3 | IRS | Yes | The secured claim of IRS in the sum of $94,206 shall be paid in quarterly installments of $3,135.00 beginning with the quarter following the Effective Date with interest at the prevailing rate, with any balance owed to be fully paid on or before the 10th anniversary of the Petition Date.. |
| 4 | the Division | Yes | The secured claim of the Division in the sum of $27,096 shall be paid in quarterly installments of $1,074.24 begining with the quarter following the Effective Date with interest at the prevailing rate, with any balance owed to be fully paid on or before the 10th anniversary of the Petition Date. |

## 2.   Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507 (a)(3), (4), (5), (6), and (7) are required to be placed in classes.  These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all classes containing Debtor's 507(a)(3), (a)(4), (a)(5), (a)(6) and (a)(7) priority unsecured claims and their treatment under this Plan:

| CLASS | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|-------|-------------|----------------|-----------|
| None  |             |                |           |

### 3.    Classes of General Unsecured Claims

General unsecured claims are uncollateralized claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the classes containing all of Debtor's general unsecured claims:

[this space left intentionally blank][

| CLASS | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | This Class contains all of Debtor's general unsecured claims, including the unpaid balance of the claim of U.S. Bank National Association ("US Bank") the current holder of a mortgage encumbering property at 27 W. Revere Place, Ocean City, NJ formerly owned by Debtor and Michael Tamburri. Through her divorce, Debtor has no title interest in that home. US Bank shall retain its lien on that home but is deemed an unsecured creditor of Debtor in this Plan. This class also contains the claim of Fulton Bank by virtiue of its judgment against Debtor in the Superior Court of New Jersey. Since Fulton Bank never levied execution against Debtor's Residence, Fulton is deemed an unsecured creditor of Debtor in this Plan. As a result, the unsecured claims that constitute Class 5 under the Plan, whether scheduled by Debtors or filed by creditors, total:$710,940.13 | Yes Claims in this class are entitled to vote on the Plan. | Each holder of an allowed unsecured claim shall receive a pro rata distribution of two (2%) percent of his/her/its claim(s) from funds generated through Debtor's ordinary operating revenues. Payments on account of allowed Class 5 unsecured claims shall be made in a single installment on the date that is the last day of the quarter in which the priority claims of the IRS and the Division are fully paid, in full satisfaction of such claims |

**4.    Class(es) of Interest Holders**

Interest holders are the parties who hold ownership interests (i.e., equity interests) in the debtor.  If the debtor is a corporation, entities holding preferred or common stock in the debtor are interest holders.  If the debtor is a partnership, the interest holders include both general and limited partners.  If the debtor is an individual, the debtor is the interest holder.  The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 6 | Rose Tamburri. | No<br>Claims in this class are not entitled to vote on the Plan, but are deemed to have accepted the Plan. | Rose, as the member of this Class, shall retain her interest in her assets but shall be paid nothing on account of such interests. |

**D.    Means of Effectuating the Plan**

**1.    Funding for the Plan**

The cash distributions under the Plan will be funded by cash flow generated from Rose's earnings as a free-lance court reporter.  Rose projects that her earnings will be sufficient to meet Rose's ordinary budget requirements and payments due on account of administrative expenses, priority tax claims and secured claims. Pro rata distributions on account of allowed general unsecured claims will be made by Debtor in a single installment on the  on the date that is the last day of the quarter in which Debtor's priority and secured claims of the IRS and the Division are fully paid, in full satisfaction of such claims The Plan payments will yield an approximate 2% dividend to holders of unsecured claims.

. The foregoing is evidential of Debtors' good faith effort to provide a meaningful recovery for her creditors.

**2.    Post-confirmation Management**

Rose shall continue to manage her assets and affairs in the ordinary course.

**3.    Disbursing Agent**

Rose shall act as the disbursing agent ("Disbursing Agent") for the purpose of making all distributions provided for under the Plan, without compensation.

**E.    Other Provisions of the Plan**

**1.    Executory Contracts and Unexpired Leases**

The Plan provides that all Executory Contracts and Unexpired Leases, except for those

specifically assumed by Debtor in writing, previously assumed by Court Order, or assumed in the Plan, shall be deemed rejected.  All proofs of claim with respect to claims arising from said rejection must be filed with the Bankruptcy Court within the earlier of (I) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejections or (ii) thirty (30) days after the Confirmation Date.  Any such claims, proofs of which are not filed timely, will be barred forever from assertion.  Assumption means that the Debtor has elected to continue to perform the obligations under such Executory Contract(s) and/or Unexpired Lease(s), and to cure defaults of the type that must be cured under the Bankruptcy Code, if any.

If you object to the assumption of your Executory Contract or Unexpired Lease, the proposed cure of any default, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to confirmation of the Plan.
.

Debtor will assume her auto lease with Mercedes-Benz Vehicle Trust and make payments when due thereunder in the ordinary course.

**2.      Changes in Rates Subject to Regulatory Commission Approval**

Debtor is not subject to governmental regulatory commission approval of any rates.

**3.      Retention of Jurisdiction**

The Court will retain jurisdiction as provided in Section III of the Plan.

**4.      Procedures for Resolving Contested Claims**

Debtor shall have sixty (60) days subsequent to confirmation to object to the allowance of claims.  Rose, as Proponent, has reviewed the claims that have been filed and does not intend to object to any claims, other than the through the treatment proposed under this Plan for the claims of Fulton Bank and US Bank, filed as secured claims but treated hereunder as unsecured claims, but Rose reserves the right to object to any amended claim filed by any creditor.

**5.      Effective Date**

The Plan will become effective on the Effective Date, which is the date that is thirty (30) days after entry of the Order confirming the Plan.

**6.      Modification**

Debtor, as Plan Proponent, may alter, amend or modify the Plan at any time prior to the Confirmation Date and thereafter as provided in Section 1127(b) of the Bankruptcy Code.

**F.      Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN

-14-

ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to Debtor.  The Proponent CANNOT and DO NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The Plan does not provide for the sale of any assets and will likely therefore not result in any gains or significant tax consequences on Debtor's tax liability.

### G.    Risk Factors

The following discussion is intended to be a non-exclusive summary of certain risks attendant upon the consummation of the Plan.  You are encouraged to supplement this summary with your own analysis and evaluation of the Plan and Disclosure Statement, in their entirety, and in consultation with your own advisors.  Based on the analysis of the risks summarized below, the Plan Proponent believes that the Plan is viable and will meet all requirements of confirmation.

### IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.

The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues which they may wish to consider, as well as certain deadlines for filing claims. The Proponent CANNOT and DO NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, that creditors or interest holders have accepted the Plan, that the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, **and** that the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

### A.    Who May Vote or Object

### 1.    Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

-15-

**2.      Who May Vote to Accept/Reject the Plan**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

**a.      What Is an Allowed Claim/Interest**

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

**THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS DECEMBER 29, 2025**

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

**b.      What Is an Impaired Claim/Interest**

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of their claim plus interest.

In this case, the Proponent believes that Classes 3, 4, and 5 are impaired and that holders of claims in those classes are therefore entitled to vote to accept or reject the Plan.  The Proponent believes that Class 6 is unimpaired and that the holder of the claims or interests represented by that Class do not have the right to vote to accept or reject the Plan.  Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

**3.      Who Is Not Entitled to Vote**

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code Section 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Code Section 507(1)(a), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes

-16-

and they are required to receive certain treatment specified by the Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

**4.      Who Can Vote in More Than One Class**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

**5.      Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section (IV.A.8.).

**6.      Votes Necessary for a Class to Accept the Plan**

A class of claims is considered to have accepted the Plan when more than one-half (½) in number and at least two-thirds (2/3) in dollar amount of the allowed claims that actually voted have voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the allowed interest-holders of such class which actually voted have voted to accept the Plan.

**7.      Treatment of Non-accepting Classes**

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Code.  The process by which non-accepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown.”  The Code allows the Plan to be "crammed down" on non-accepting classes of claims or interests if it meets all consensual requirements except the voting requirements of Section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. §1129(b) and applicable case law.

**8.      Request for Confirmation Despite Nonacceptance by Impaired Class(es)**

The party proposing this Plan asks the Court to confirm this Plan by cramdown of  impaired classes if any of these classes do not vote to accept the Plan.

**B.    Liquidation Analysis**

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, a debtor's assets are usually sold by a Chapter 7 trustee.  Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Unsecured creditors are then paid from any remaining sales proceeds, according to their right to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claims.  Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation.  The Plan Proponent maintains that this requirement is met here for the following reasons:

If liquidated under Chapter 7, the Chapter 7 trustee would abandon any claim or interest in the Residence after recognizing  the balance due on the mortgages held by Wells Fargo and PNC together with the secured claims of IRS and the Division, consideration of the title interest of Michael, Rose's exemption opportunity, and the significant priority tax claims to be paid exceed the asset's net liquidation value, leaving no value available to fund a meaningful distribution to holders of unsecured claims.  Debtor believes that her cash and account balances, together with her furnishings, clothing, jewelry, accessories, and other personal property fall within the statutory exemptions allowed to Debtor under the Bankruptcy Code or, to the extent any value exceeds those statutory exemptions, that value would be applied to the secured claims of the Division and IRS and to administrative expenses entitled to priority.  Thus, a liquidation under Chapter 7 would likely not generate any proceeds to provide any value for the claim of any general unsecured creditor.

Under the Plan, the Proponent proposes to fully pay claims entitled to priority, as required, and to create a fund  to pay a 2% dividend on account of unsecured claims,  thereby plainly satisfying the "Best Interest Test" by creating a fund for distribution greater than the projected Chapter 7 estate value.

**C.    Feasibility**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two (2) important aspects of a feasibility analysis.  The first aspect considers whether Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

Cash Debtor will have on hand
on the Effective Date (including assets claimed as exempt)
(net of budget expenses):

|  |  |
|---|---|
|  | $ 25,000.00 |
| To Be Paid: |  |
| :        Administrative Claims: | $ 20,000.00 |

Secured claims of Wells Fargo and PNC shall be paid according to their term; the secured claims of IRS and the Division shall be paid quarterly beginning with the quarter following the Effective Date; the priority tax claims of IRS and the Division shall be paid quarterly beginning wth the quarter following the Effective Date.

Balance after paying these amounts:                          $ 5,000.00, a sum sufficient allow Debtor to begin to accumulate funds for quarterly payments due to IRS and the  Division.

Debtor will have sufficient cash on hand as needed to pay administrative expenses, any fees due to the Clerk of the Court or the U.S. Trustee on the Effective Date, and the sums necessary to make payments on Debtors' other regular budget items, when due, from remaining cash and additional income realized between now and the Effective Date.

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

The Proponent believes that this second aspect of the feasibility requirement is met for the following reasons:

The Plan contemplates distribution from Rose's continued employment, net of household expenses, sufficient to fully satisfy administrative expenses, claims entitled to priority, the secured claims of Rose's mortgagees, IRS and the Division and a 2% dividend to the holders of unsecured claim after full payment of claims entitle to priority.

During 2025, Rose's taxable income and that of her estate following the Petition Date totaled approximately $264,000.   Taxes on those earnings were $66,000.  Assuming Rose can manage to sustain or even enhance her earnings and conscientiously cut her household budget expenses, Rose's disposable income should sufficient to make the committed payments due over the life of the Plan.

Accordingly, the Plan Proponent, believes on the basis of the foregoing that the Plan is feasible.

## V.   EFFECT OF CONFIRMATION OF PLAN

### A.   Discharge

The Plan provides that upon completion of the distributions required under the Plan, Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. §1141.  However, any liability imposed by the Plan will <u>not</u> be discharged.  If confirmation of the Plan does not occur or if, after confirmation occurs, Debtor elects to terminate the Plan, the Plan shall be deemed null and void.  In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims against Debtor or her estatete or any other persons, or to prejudice in any manner the rights of Debtor or her estate or any person in any further proceeding involving Debtor or her estate.  Upon confirmation of the Plan, its provisions shall be binding upon Debtor, all creditors and all interest holders, regardless of whether such creditors or interest holders are impaired or whether such parties accept the Plan.

### B.   Revesting of Property in the Debtor

Except as provided in the Plan, the confirmation of the Plan revests all of the property of the estate in Debtor.

### C.   Modification of Plan

The Proponent may modify the Plan at any time before confirmation; however, the Court may require a new disclosure statement and/or re-voting on the Plan if the Proponents modify the Plan before confirmation.

The Proponent may also seek to modify the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modification after notice and a hearing.  The Proponent further reserves the right to modify the treatment of any allowed claims at any time after the Effective Date of the Plan upon the consent of the creditor whose allowed claim treatment is being modified, so long as no other creditors are materially adversely affected.

### D.   Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if

cause exists under Section 1112(b).  If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

Quarterly fees pursuant to 28 U.S.C. §1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed or closed pursuant to a final decree.

*S/ Rose A. Tamburri*

Dated: June 2, 2026

_____

ROSE A. TAMBURRI